IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER POWELL-FOLKS                         :
                                              :    CIVIL ACTION
                                              :    No.: 2:24-cv-05065 (GAM)
                    Plaintiff                 :
           Vs.                                :
VILLANOVA UNIVERSITY                          :
TIA NOELLE PRATT                              :
FATHER KEVIN DePRINZO                         :
FATHER ARTHUR PUCARO                          :
                    Defendants                :

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

**I.      INTRODUCTION**

1.  Plaintiff brings this action for monetary damages, and other appropriate relief to redress the intentional violations of her civil rights, pursuant to the Civil Rights Act, (Title VII) 42 U.S.C. §2000e-1, et seq., the Civil Rights Act 42 U.S.C. §1981, secured under the Constitution and laws of the United States, and the Pennsylvania Human Relations Act, against Villanova University, Tia Noelle Pratt, Father Kevin DePrinzo and Father Arthur Pucaro, collectively referred to as Defendants.

**II.     JURISDICTION**

2.  Federal court jurisdiction is proper pursuant to 28 U.S.C. § 1331 and §1343. The Court also has supplemental jurisdiction over Plaintiff's state law claims. Prior to filing this lawsuit Plaintiff exhausted her administrative remedies under Title VII and the PHRA and was issued a Right to Sue by the EEOC on August 5, 2024, a copy of which is attached hereto.

1

### III.     VENUE

3. Venue is proper pursuant to 28 U.S.C. § 1391, as the incidents alleged herein occurred within the Eastern District of Pennsylvania.

### IV.     PARTIES

4. Plaintiff Jennifer Powell-Folks is an adult citizen of the United States, who resides in the City of Philadelphia.

5. Plaintiff is Black African American, by race, and African Methodist Episcopal by religion.

6. Defendant Villanova University (hereinafter "Villanova") is an educational institution, with its offices located at 800 Lancaster Avenue, Villanova, Pennsylvania.

7. Defendant, Tia Noelle Pratt, at all times relevant to the issues in this case, was Villanova's Assistant Vice President, and upon information and belief resides in Pennsylvania.

8. Defendant Father Kevin DePrinzo, at all times relevant to the issues in this case, was Villanova's Vice President, and upon information and belief resides in Pennsylvania.

9. Defendant, Father Arthur Pucaro, at all times relevant to the issues in this case, was Villanova's Assistant Vice President, and upon information and belief resides in Pennsylvania.

### V.     BRIEF STATEMENT OF THE FACTS

10. Plaintiff was hired by Villanova in or about January 2022 as its Director of Finance and Administration, reporting to the Vice-President for Mission and Ministry, Office for Mission and Ministry.

11. Villanova is a Catholic university.

12. Plaintiff's concerns began in early Fall of 2022. It was when the Mission Engagement & Strategic Initiative team started to lay out their requests for the Lenten season writings that go out to the entire university and subscribers of the Catholic Social thought publication, donors and alumni. They are testimonials that are referenced with scripture including blessings and reflections on a person's Christian journey.

13. This topic came up in the bi-weekly Office of the Vice President meeting which included the Director of Communication ("DOC") Suzanne Wentzel, Assistant Vice Presidents, Data Manager, Executive Assistant and Plaintiff.

14. The Lenten Season postings came up in a meeting by Ms. Wenzel saying it was "that time of year to make the request" which will go out to the entire Villanova body which included current students, staff, alumni, donors, and "appropriate" religious affiliates, i.e., those who support the social Catholic thought publication.

15. At this meeting, they discussed that they were gathering the testimonies for the season to be shared during Christmas and Plaintiff mentioned how nice it was to receive them. They explained that they were putting out the call to ask for the testimonial and that they would accept testimonials from staff.

16. Plaintiff said she would love to be able to support it in some way and started asking questions and was quickly told "**Oh no don't worry about it you know we accept them from folks who understand the "Villanova" Lenton practice,**" which Plaintiff thought was unusual considering that Lenton is not just a Catholic holiday, it is a Christian holiday.

3

17. In short, Plaintiff basically was discouraged from submitting testimonials and she was being discouraged from feeling a part of and/or being included in that part of their Catholic Villanova practice, because Plaintiff is not Catholic.

18. From the very beginning, Tia Noelle Pratt, newly promoted Assistant Vice President, made it clear to Plaintiff by stating in multiple meetings how Father Peter, the college President, likes her.

19. In or about September 2022 at conclusion of the commissioning of a painting of St. Augustine as his true likeness as a black African man, Ms. Pratt stated that it was not in the school's best interest to share the commissioning of the painting in the Philadelphia Inquirer or outside of the school because of how "**they** could use it against Villanova" to confirm their belief that the school was not supportive of telling its truth about its prior depiction of St. Augustine as White.

20. Plaintiff told her that Plaintiff found Ms. Pratt's comment to be racist because it gives a false impression that St. Augustine is White and sharing the school's resistance to being supportive of other cultures and races and having to explain its resistance to accepting St. Augustine as a Black man whom their order was founded. Present at this meeting were Father DePrinzio, Father Arthur Pucaro, and others.

21. Over the past year and 10-months before filing her EEOC Charge, Plaintiff found herself being subjected to many instances of resistance. Plaintiff **was repeatedly told by Father Pucaro, Father DePrinzio, and Ms. Pratt that she was not embracing the "Villanova way" or understanding how the Priest order manages Villanova**.

22. These comments to Plaintiff also included the Human Resources Manager, Albert Baladez. Mr. Baladez **told Plaintiff**, "There is a right way, wrong way and Villanova

way of doing things," and "You are not embracing Villanova way", referring to Villanova's Catholic way of doing things.

23. Plaintiff was not hired for a "Catholic" way of doing things, but as a Director of Finance and Administration.

24. In or about October 2022, in a supervisory meeting Plaintiff was brought into by the VPs, Father Arthur Pucaro, Plaintiff's supervisor Fr. Kevin DePrinzio, and AVP Tia Pratt, and AVP Father Arthur Pucaro threatened Plaintiff and told Plaintiff that she was not embracing the collective process of how Villanova and OMM operated, and if Plaintiff was not comfortable there may be this is not the place for Plaintiff.

25. Plaintiff told them she was not quitting but if they have a problem with Plaintiff they should say so. Plaintiff told them that she did not really understand what he was referring to exactly, because Finance is not a "collective decision process", but that she simply follows legal and procedural processes, as well as financial leadership.

26. Father Pucaro then tried clearing up his statement by saying that they wanted Plaintiff to be more collaborative, of which Plaintiff expressed with whom exactly, because she was working with staff on their fiscal goals and with the Auditor and financial leadership.

27. Plaintiff also asked them to share what the financial leadership's issues were with her work, which they did not and could not answer.

28. Plaintiff also followed up her conversation with Father DePrinzio to ensure there were no major issues with her work. He said there was none.

29. Then in February of 2023, Plaintiff was asked to attend a meeting with Asst. VP, John McLaughlin and Fr. Kevin DePrinzio about adding new positions.

30. At this time, Plaintiff met with Fr. DePrinzio for their 1:1 bi-weekly meeting to ensure Plaintiff was meeting her goals and staying on track with his needs.

31. During the prior bi-weekly meeting, Fr. DePrinzio shared that he was not going to attend the fiscal meeting with Mr. McLaughlin, although he asked for the meeting. Plaintiff did not know the agenda or what the expectations were except that he was inquiring about additional funds for more administrative staff.

32. Upon connecting to the call, Mr. McLaughlin seemed rather upset that Fr. DePrinzio was not joining the meeting, considering he asked for the call. Plaintiff assured him she was willing to fill in any gaps or answer any questions.

33. Mr. McLaughlin shared that was the "Villanova way of doing things," and went on to share that they were not going to receive any additional payroll funds and how Plaintiff could work them out.

34. He also shared the fiscal projections for the current and new fiscal year which was invaluable for forecasting their budgets.

35. This was when Plaintiff began to understand that the Villanova way meant, **a priest or Catholic management operating process**.

36. Thereafter, Mr. McLaughlin and his boss, VP Neil Horgan, requested a meeting with Fr. DePrinzio and Plaintiff about the fiscal future.

37. Plaintiff confirmed with Fr. DePrinzio that she should be in this meeting, and he confirmed it.

38. However, the most insulting part of this experience was when Plaintiff showed up to attend this meeting and the Executive Assistant, M_____ P_____

meeting?" Plaintiff was shocked at her comment, then said "yes". Piotti seemed very annoyed and continued to express her surprise that they would want to speak with Plaintiff. At this point, Plaintiff just walked away and asked to be seated in the conference area but was then met by Tia Pratt walking by the room a couple times until the door was closed with a **clear scowl on her face.**

39. On or about September 27, 2023, Plaintiff met with Human Resources Campus Representative, Theresa Walton over a Zoom meeting, and told her that Plaintiff wanted to file a complaint of hostile work environment that she felt was motivated by Plaintiff's religion and race because of the things she had previously told Walton about Father DePrinzio, Father Pucaro, Tia Pratt, and Catherine Giancatarino, (w/f), the Director of Service and Social Justice, who talked to Plaintiff in a condescending, and disrespectful manner, and Plaintiff had also called her out on it.

40. Ms. Walton told Plaintiff that she would not be the person Plaintiff was to file the complaint with, but she would have to refer it to one of her colleagues.

41. On or about October 10, 2023, Plaintiff received an email from Mr. Baladez to meet and discuss Plaintiff's complaint.

42. On October 11, 2023 Plaintiff met with Mr. Baladez, where Plaintiff discussed with him her complaint of hostile work environment because of her race and religion.

43. Baladez said he would talk to Father DePrinzio about Plaintiff's complaint, in addition to other people that Plaintiff mentioned.

44. Over the next week or so, Mr. Baladez started discussing a separation agreement with Villanova rather than taking Plaintiff's

45. On October 27, 2023, Plaintiff was called into a meeting with Father DePrinzio and Mr. Baladez, at which time Plaintiff was handed a "separation agreement" which included false statement attributed to Plaintiff. Plaintiff never signed the separation agreement, and Plaintiff was terminated of her employment that day by Defendants.

46. Plaintiff asserts that she was subjected to a racially and religiously hostile work environment by Defendants, and retaliatory termination of her employment because she challenged and complained about Defendants' discriminatory actions.

47. As a direct and proximate cause of the events initiated, perpetrated, and performed by Defendants as aforesaid, Plaintiff has been injured and severely damaged. Such injuries and damages include, but are not limited to, emotional and physical harm, pain and suffering, loss of income and benefits, and loss of future earning power, embarrassment and humiliation, sleepless nights, anxiety, and depression.

## V.    STATEMENT OF CLAIMS

### COUNT ONE- 42 U.S.C. §1981 VIOLATION-RACE DISCRIMINATION

48. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 47 above as though fully set forth herein.

49. The acts and conduct of the Defendants as stated above where Plaintiff was subjected to a hostile work environment and termination of her employment because of her race is a violation of the Civil Rights Act, 42 U.S.C. 1981.

50. As a direct and proximate result of the said race discriminatory practices of the Defendants, Plaintiff has sustained loss wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT TWO-SECTION 1981 VIOLATION-RETALIATION

51. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 50 as if same were fully set forth at length herein.

52. The acts and conduct of the Defendants as stated above where Plaintiff was subjected to numerous adverse actions by Defendants in retaliation for complaining and or opposing race discrimination by Defendants were violations of the Civil Rights Act, 42 U.S.C. §1981.

53. As a direct and proximate result of said violation of the Civil Rights Act, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT THREE- 42 U.S.C. §2000e -1 et Seq (Title VII) Race and Religion Discrimination Claims Against Villanova only.

54. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 53 above as though fully set forth herein.

55. The acts and conduct of Villanova, through its officers and management officials as stated above where Plaintiff was subjected to a hostile work environment and termination of her employment because of her race and religion are violations of the Civil Rights Act, (Title VII) 42 U.S.C. §2000e-1, et seq.

56. As a direct and proximate result of the said race and religion discriminatory practices of Villanova, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

### COUNT FOUR- 42 U.S.C. §2000e-5, et Seq. (Title VII) Retaliation Claims Against Villanova only

57. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 56 above as though fully set forth herein.

58. The acts and conduct of the Villanova through its officers and management officials as stated above where Plaintiff was subjected to adverse employment actions because she engaged in protected activities under the Civil Rights Act, (Title VII) 42 U.S.C. §2000e-5, et seq. are violations of the said Civil Rights Act.

59. As a direct and proximate result of the said retaliatory practices of Villanova, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

### COUNT FIVE- PHRA Race and Religion Discrimination Claims Against All Defendants

60. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 59 above as though fully set forth herein.

61. The acts and conduct of the Defendants as stated above where Plaintiff was subjected to a hostile work environment and termination of her employment because of her race and/or religion are violations of the Pennsylvania Human Relations Act (PHRA).

62. The individual Defendants Tia Noelle Pratt, Father Kevin DePrinzo and Father Arthur Pucaro, aided and abetted in the race and or religious discrimination of the Plaintiff and are therefore liable to Plaintiff under the PHRA.

63. As a direct and proximate result of the said race and religion discriminatory practices of the Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss

of future earning power, loss of back pay, front pay, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT SIX- PHRA Retaliation Claims Against All Defendants

64. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 63 above as though fully set forth herein.

65. The acts and conduct of the Defendants as stated above where Plaintiff was subjected to adverse actions by Defendants after complaining and or opposing race and religion discrimination by Defendants were violations of the PHRA.

66. The individual Defendants Tia Noelle Pratt, Father Kevin DePrinzo and Father Arthur Pucaro, aided and abetted in the retaliatory actions taken against Plaintiff and are therefore liable to Plaintiff under the PHRA.

67. As a direct result of the said retaliatory practices of the Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests this Honorable Court grant the following relief:

A. Award to Plaintiff damages and compensatory relief for the unlawful acts of Defendants, including but not limited to damages for loss wages, loss benefits, physical pain and suffering, emotional pain and suffering, compensatory damages, punitive damages, and all damages permitted by law under the Civil Rights Act, Title VII, and the PHRA against all Defendants.

B.    Grant Plaintiff, pursuant to the Civil Rights Act, (Title VII), Section 1981 and 42 U.S.C. §1988, reasonable attorneys' fees, and costs, and disbursements; and

C.    Expert fees, costs and expenses of litigation, and such other and further damages and equitable relief permitted under these statutes and laws as this court may deem just and proper under the circumstances to make Plaintiff whole.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all factual issues in this matter.

Respectfully submitted,

Dated: January 6, 2025

Olugbenga O. Abiona, Esquire
ABIONA LAW PLLC
Attorney Id#57026
P.O. Box 3326
Cherry Hill, NJ 08034
(215)625-0330



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/05/2024

To: Jennifer Powell-Folks
8603 Williams Avenue
Philadelphia, PA 19150

Charge No: 530-2024-01544

EEOC Representative:  Legal Unit
(267) 589-9707

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
08/05/2024

Karen McDonough
Deputy District Director

Cc:
Hedya Aryani
Villanova University Office of the Vice President and General Counsel
Picotte Hall at Dundale, 2nd Floor 800 Lancaster Avenue
Villanova, PA 19085

Olugbenga O Abiona Esq.
ABIONA LAW PLLC
121 South Broad Street, Ste 1200
Philadelphia, PA 19107

Please retain this notice for your records.