IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JENNIFER POWELL-FOLKS, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | No. 2:24-cv-05065-GAM |
| v. | : | |
| VILLANOVA UNIVERSITY, TIA NOELLE PRATT, FATHER KEVIN DePRINZO and FATHER ARTHUR PUCARO, | : | |
| Defendants. | : | |

## O R D E R

**AND NOW**, this _____ day of _____, 2025, upon consideration of the Motion of Defendants, Villanova University, Tia Noelle Pratt, Father Kevin DePrinzio and Father Arthur Purcaro, to Dismiss Hostile Work Environment Claims under Counts I, III, and V of Plaintiff's Amended Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion is **GRANTED**. IT IS FURTHER **ORDERED** that Hostile Work Environment Claims under Counts I, III and V against the Defendants are **DISMISSED with prejudice**.

**BY THE COURT:**

_____
The Honorable Gerald A. McHugh

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER POWELL-FOLKS, | : | CIVIL ACTION |
| Plaintiff, | : | No. 2:24-cv-05065-GAM |
| v. | : | |
| VILLANOVA UNIVERSITY, TIA NOELLE PRATT, FATHER KEVIN DePRINZO and FATHER ARTHUR PUCARO, | : | |
| Defendants. | : | |

**DEFENDANTS' MOTION TO DISMISS HOSTILE WORK ENVIRONMENT CLAIMS UNDER COUNTS I, III, AND V OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants, Villanova University, Tia Noelle Pratt, Father Kevin DePrinzio, and Father Arthur Purcaro, hereby move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice hostile work environment claims against them under Counts I, III, and V. The bases for this Motion are set forth in the accompanying Memorandum of Law in support thereof.

WHEREFORE, Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss, with prejudice, hostile work environment claims under Counts I, III, and V of the Amended Complaint.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: January 21, 2025

/s/ Leslie Miller Greenspan
Leslie Miller Greenspan, Esquire (ID: 91639)
Elizabeth A. Castillo, Esquire (ID: 332138)
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
**Attorneys for Defendants Villanova University, Tia Noelle Pratt, Father Kevin DePrinzio, and Father Arthur Purcaro**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JENNIFER POWELL-FOLKS, | : | CIVIL ACTION |
| Plaintiff, | : | No. 2:24-cv-05065-GAM |
| v. | : | |
| VILLANOVA UNIVERSITY, TIA NOELLE PRATT, FATHER KEVIN DePRINZO and FATHER ARTHUR PUCARO, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS HOSTILE WORK ENVIRRONMENT CLAIMS UNDER COUNTS I, III, AND V OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants, Villanova University ("Villanova"), Tia Noelle Pratt ("Dr. Pratt"), Father Kevin DePrinzio (incorrectly identified as "Father Kevin DePrinzo"), and Father Arthur Purcaro (incorrectly identified as "Father Arthur Pucaro") (collectively, the "Villanova Defendants"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss hostile work environment claims under Counts I, III, and V of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

Section 1981, Title VII, and the PHRA are not intended to be general civility codes for the workplace. Plaintiff's Amended Complaint in this case, however, contains nothing more than allegations of petty slights in the workplace and feedback on her performance that are unrelated to her race or religion. None of this alleged conduct meets the high threshold required to assert hostile work environment claims. See Abuomar v. Pa. Dep't of Corr., 754 F. App'x 102, 107 (3d Cir. 2018) (a plaintiff must

meet a "high threshold for a hostile work environment claim"); Gates v. Aramark Campus, LLC, No. 21-1081, 2022 U.S. Dist. LEXIS 12901, at *28 (E.D. Pa. Jan. 24, 2022) (J. McHugh) ("[T]he legal standard for a hostile work environment is notably high and requires such severe or pervasive behavior as to function as an abusive work environment."). For instance, Plaintiff claims that one of the named Defendants "scowled" at her and that an Executive Assistant at the University "condescending[ly]" and "loudly" stated, "what, you're in this meeting?" There are no allegations of racial or religious slurs, nor any physical contact, nor anything even remotely rising to the level of a hostile work environment claim.

As a matter of law, the conduct alleged by Plaintiff is not severe or pervasive and cannot establish a hostile work environment claim. When a plaintiff's pleading is as deficient as the Amended Complaint in this case, the granting of a motion to dismiss is appropriate and warranted.

## II.    FACTS

Plaintiff filed this lawsuit on September 23, 2024, asserting claims of race- and religion-based discrimination and retaliation. On January 6, 2025, following the Villanova Defendants' initial Motion to Dismiss (doc. 8), Plaintiff filed an Amended Complaint.[1] Specifically, Plaintiff alleges race and religious discrimination based on hostile work environment, discriminatory termination, and retaliation against the Villanova Defendants under § 1981 (Counts I and II), race and religious discrimination based on hostile work environment, discriminatory termination, and retaliation against

---

[1] When Plaintiff first filed her Amended Complaint (doc. 10), she inadvertently omitted a few paragraphs. (See doc. 12 at 1). Thus, Plaintiff later substituted the Amended Complaint with a correctly scanned version including all paragraphs. (Doc. 12.)

2

Villanova only under Title VII (Counts III and IV), and race and religious discrimination based on hostile work environment, discriminatory termination, and retaliation against the Villanova Defendants under the Pennsylvania Human Relations Act ("PHRA") (Counts V and VI). (See doc. 12.) Other than adding the words "and termination of her employment" into Counts I, III, and V, the Amended Complaint is identical to the original Complaint. (Compare doc. 1 with doc. 12.)

Plaintiff alleges that she suffered a hostile work environment while employed as the "Director of Finance and Administration" at Villanova, a "Catholic university," due to Plaintiff's "Black African American" race and "African Methodist Episcopal" religion. (Id. at ¶¶ 5, 10-11.) Plaintiff alleges that certain incidents "beginning in early Fall of 2022" and "[over the past year]" of 2023 created a hostile work environment. (Id. at ¶¶ 12, 21.) First, Plaintiff claims an unidentified individual declined Plaintiff's offer to support Villanova's "Lenten season writings" in an "Office of the Vice President meeting." (Id. at ¶¶ 13, 16.) Second, Plaintiff claims that Dr. Pratt "stated in multiple meetings how Father Peter, the college President, likes her." (Id. at ¶18.) Third, Plaintiff claims that Dr. Pratt stated in a meeting, after "the commissioning of a painting of St. Augustine as his true likeness as a black African man," that "it was not in [Villanova's] best interest to share the commissioning of the painting in the Philadelphia inquirer or outside of the school because of 'how they could use it against Villanova' to confirm their belief that the school was not supportive of telling its truth about its prior depiction of St. Augustine as white." (Id. at ¶¶ 19.) Fourth, Plaintiff claims Defendants told Plaintiff, on more than one occasion, that she was not embracing "the Villanova way" or "collective process," (id. at ¶¶ 21-22, 26, 33), which Plaintiff subjectively believed meant "a priest or Catholic

3

management operating process." (Id. at ¶ 35 (emphasis omitted).) Lastly, Plaintiff claims that Dr. Pratt and Fr. DePrinzio's executive assistant, Maureen Piotti, suggested disapproval of Plaintiff's presence at a fiscal meeting. (Id. at ¶ 38.) Plaintiff claims "Piotti[] (w/f) . . . talked to Plaintiff in a condescending manner and vocalized loudly, 'what, you're in this meeting?'" and that after Plaintiff walked away to the conference area, "the door was closed with a clear scowl on [Dr. Pratt's] face." (Id.)

As set forth in more detail below, none of this alleged conduct is severe or pervasive, and Plaintiff's hostile work environment claims should be dismissed.

### III. ARGUMENT

#### A. Legal Standard on a Motion to Dismiss

A complaint should be dismissed where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead factual allegations that, taken as true, form a plausible basis for recovery on the claim in question. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The Third Circuit, interpreting Twombly, instructed that courts considering a motion to dismiss under Rule 12(b)(6) are to accept the factual allegations of the complaint as true; to draw inferences in favor of the plaintiff insofar as such inferences are reasonable; and to determine whether the plaintiff is entitled to relief under a reasonable reading of the complaint's factual allegations. Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008), citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002), In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 215-16 (3d Cir. 2002).

It is insufficient for a complaint to set forth a conclusory recitation of the elements of a cause of action. Umland v. Planco Fin. Servs., 542 F.3d 59, 64 (3d Cir. Pa. 2008),

citing Phillips, 515 F.3d at 233. Courts are not to credit "bald assertions" or "a legal conclusion couched as a factual allegation." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Papasan, 478 U.S. at 286. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 570. "Conclusory allegations are insufficient to survive a motion to dismiss." Harris v. St. Joseph's Univ., No. 13-3937, 2014 U.S. Dist. LEXIS 65452, *3 (E.D. Pa. May 13, 2014) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). The Court need not accept as true "unsupported conclusions and unwarranted inferences" or legal conclusions. Id. See also Twombly, 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### B. Legal Standard for Hostile Work Environment Claims

To succeed on a hostile work environment claim, an employee must establish that (1) "[she] suffered intentional discrimination because of [her protected characteristic]," (2) "the discrimination was severe or pervasive," (3) "the discrimination detrimentally affected the plaintiff," (4) "the discrimination would detrimentally affect a reasonable person in like circumstances," and (5) "the existence of *respondeat superior* liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). Discrimination claims, including hostile work environment claims, under Title VII, Section 1981, and the PHRA involve the same legal analysis. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267 (3d Cir. 2010) (explaining that the elements of employment discrimination claims are "generally identical" under Section 1981 and

5

Title VII); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("[Pennsylvania courts] generally interpret the PHRA in accord with its federal counterparts."); Butler v. Artic Glacier USA, 213 F. Supp.3d 711, 716 (E.D. Pa. 2016) (race discrimination claims under Title VII, Section 1981, and the PHRA involve the "same legal analysis").

For workplace harassment to be actionable, a plaintiff has a high bar. The harassment must be severe or pervasive. The Third Circuit Court recently explained:

> To determine whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [Mandel v. M & Q Packaging Corp., 706 F.3d 157, 168 (3d Cir. 2013)] (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). For discrimination to constitute **severe or pervasive** behavior, it must "alter the conditions of [the victim's] employment and create **an abusive working environment**." Meritor Sav. Bank, FSB v. Vinson, [477 U.S. 57, 67], 106 S. Ct. 2399 (1986) (internal quotation marks omitted). The Supreme Court has emphasized that "conduct **must be extreme**" to satisfy this standard, so "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are inadequate. Faragher v. City of Boca Raton, [524 U.S. 775, 788] (1998).

Nitkin v. Main Line Health, 67 F.4th 565, 570 (3d Cir. 2023) (second and third emphasis added). These standards "for judging hostility are sufficiently demanding" so that discrimination laws "do[] not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [jokes], and occasional teasing." Faragher, 524 U.S. at 778 (internal quotation marks and citations omitted).

### C. Dismissal of a Complaint on a Motion to Dismiss for Failure to Sufficiently Plead Severe or Pervasive Discriminatory Conduct is Appropriate.

At the 12(b)(6) stage, hostile work environment claims are dismissed when the complaint fails to plausibly allege facts from which it can be inferred that the plaintiff was subject to severe or pervasive harassment. See Sousa v. Amazon.com, Inc., No. 22-3043, 2023 U.S. App. LEXIS 30087, at *6 (3d Cir. Nov. 13, 2023); Trevizo v. Del Toro, No. 1:23-CV-00508, 2024 U.S. Dist. LEXIS 49741, at **22-24 (M.D. Pa. Mar. 20, 2024) (collecting cases).

In Sousa, the Third Circuit court affirmed the district court's dismissal of a sex-based hostile work environment claim. 2023 U.S. App. LEXIS 30087, at *12. The court held that the plaintiff's claim failed because she did not "sufficiently alleged that [her supervisor's] conduct was so severe or pervasive that it altered her conditions of employment." Id. at *6. The plaintiff alleged that her supervisor "made a series of advances toward [plaintiff], such as sending her a photograph of himself, asking her what she thought of his haircut, and calling her on at least fourteen separate days over the span of three months primarily to discuss personal matters, such as their dating lives." Id. at *2. Plaintiff further asserted that her supervisor referenced the prospect of him helping her to negotiate a promotion and "he had a reputation for helping female subordinates who appeared interested in him and disfavoring those who turned him down." Id.

However, the Sousa court found these allegations insufficient. It reasoned, *inter alia*, that the supervisor's advances towards her, which included "periodic comments and occasional late-night phone calls in which he sometimes inappropriately veered into

7

Sousa's personal life," did not "amount[] to more than poor taste that is sometimes part of 'the ordinary tribulations of the workplace.'" Id. at *6, quoting Faragher, 524 U.S. at 788. The Court further reasoned that the plaintiff's allegations about her supervisor's conduct were not "physically threatening, humiliating, or even highly offensive" and did not "impact[] her ability to do her job or show how [the conduct] otherwise altered her conditions of employment." Id. at *7.

Likewise, in Trevizo, the district court dismissed hostile work environment claims on the basis of gender, ethnicity, or color. The plaintiff's central claim was that her supervisor "continuously treated" her "less favorably than her white male counterparts." 2024 U.S. Dist. LEXIS 49741, at *3. She alleged, among other conduct, that her supervisor (1) "scrutinized differently" the work product of the division she managed than her "white, male predecessor," (2) "consistently denied approval of developmental training for [the plaintiff]" that could lead to a promotion, (3) stated to a white male employee who was acting in plaintiff's place that "it is so much nicer having you attend the meetings, you are so much more agreeable," and (4) "consistently misinterpret[ed] e-mails from [the plaintiff] as though they were aggressive or overstepping her authority." Id. at **3-4.

However, the court held, "[g]iven the vague and episodic nature of the alleged conduct," the plaintiff "failed to allege facts supporting a reasonable inference that she was subject to discrimination that was severe or pervasive." Id. at *18. The court reasoned, *inter alia*, that "many of [the plaintiff's] allegations are vague and unsupported by facts suggesting how, or even if, they impacted her work environment." Id. The court further explained that while it "do[es] not expect [the plaintiff] to plead dates or

8

even exact numbers," the term "consistently" was too "vague" to determine pervasiveness. Id. at **19-20. Moreover, the court reasoned, the plaintiff did not "allege facts tying the different actions by [her supervisor] together" to plausibly show "continuous and concerted" conduct. Id. at *20, citing Sousa v. Amazon.com, Inc., No. 1:21-CV-717-SB, 2022 U.S. Dist. LEXIS 177093, at *2 (D. Del. Sept. 29, 2022), aff'd, 2023 U.S. App. LEXIS 30087.

### D. Plaintiff Fails to Plead Severe or Pervasive Discriminatory Conduct.

In the instant matter, Plaintiff's Amended Complaint is equally lacking details to plausibly allege a hostile work environment claim on the basis of race or religion.[2] Unlike the cases cited, Plaintiff's allegations include no severe conduct, such as a "loathsome racial slur," highly offensive comment, or "inappropriate physical contact." Henderson, 2022 U.S. Dist. LEXIS at *24; see also Sousa, 2023 U.S. App. LEXIS 30087, at *6. In fact, none of her allegations include physical contact, and the alleged comments by Villanova staff include no reference at all to Plaintiff's race or religion. Even in the incident Plaintiff self-proclaims as "the most insulting" – when a white Executive Assistant asked her "what, you're in this meeting?" – there was no reference to Plaintiff's race or religion. (Doc. 12 at ¶ 38.) An Executive Assistant's mere questioning of, and surprise expressed at, Plaintiff's attendance at a meeting simply does not rise to the level of a hostile work environment. Nor does the mere allegation

---

[2] In addition to hostile work environment, Plaintiff newly alleges discriminatory termination. However, she does not plead or put forth allegations to support another theory of discrimination, such as disparate impact or treatment. (See generally doc. 12.)

9

that the speaker was white transform her alleged question into an "insult" based on Plaintiff's race.

At most, Plaintiff vaguely and baldly alleges that Fr. Purcaro "threatened" her before telling her "she was not embracing the [Villanova] collective process" and that Villanova maybe "[was] not the place for Plaintiff." (Doc. 12 at ¶ 24.) This allegation, however, is insufficient to plead a claim of severe discriminatory conduct because it is a "conclusory" and "bald assertion." Morse, 132 F.3d at 906; Harris, 2014 U.S. Dist. LEXIS 65452, at *3. Plaintiff does not allege any detail about the content or severity of the purported "threat," and the alleged "threat," based on Plaintiff's own pleading, is nothing more than a potential criticism of Plaintiff's work and resistance to working collaboratively with others in a "collective process." (See doc. 12 at ¶ 24.)

Plaintiff's allegations are also insufficient to plead pervasive discriminatory conduct. Turning first to Plaintiff's allegations of race discrimination, at best, there are only two incidents that Plaintiff alleges in support of race discrimination and, in addition to lacking any alleged connection to Plaintiff's race, they also are not pervasive. These allegations are: (1) Dr. Pratt's comment in Fall 2022 about the University's communication of the new St. Augustine painting, and (2) the one meeting where a white staff member asked Plaintiff "what, you're in this meeting?" (See doc. 12 at ¶¶ 19, 38.)

Plaintiff does not connect her other allegations of discrimination to her race or even describe the "Villanova way" as being about race. Rather, Plaintiff describes it as a priest or Catholic management operating process. Thus, the other allegations in her Amended Complaint cannot support her race discrimination claim. See, e.g., Abdallah

v. Allegheny Valley Sch., No. 10-5054, 2011 U.S. Dist. LEXIS 10667, at *13 (E.D. Pa. Feb. 1, 2011) ("That Plaintiff is a practicing Muslim and may have been discriminated against because of his faith does not transform said discrimination to race-based discrimination."). Only two incidents, involving no extreme conduct, by two different people over the course of several months can in no way be considered pervasive. See Sousa, 2023 WL 7486751, at **6-7; Trevizo, 2024 U.S. Dist. LEXIS 49741, at **18-20.

Even considering all of Plaintiff's allegations of discrimination, the discriminatory conduct alleged is still insufficient to plausibly suggest pervasiveness – an "extreme" pattern of conduct that "alter[s] the conditions of [Plaintiff's] employment and create[s] an abusive working environment." Nitkin, 67 F.4th at 570 (citation and internal quotation marks omitted). Thus, Plaintiff's hostile work environment claims based on race and religion should be dismissed.

First, the allegations do not plausibly show how the discriminatory conduct altered Plaintiff's working conditions. At most, Plaintiff's allegations consist of comments and facial expressions made to her or in front of her. Plaintiff does not specify how these allegations "impact[ed] her ability to do her job or show how [the conduct] otherwise altered her conditions of employment." Sousa, 2023 U.S. App. LEXIS 30087, at *7. At worst, plaintiff specifies that on one occasion, one assistant vice president suggested that Villanova may not be the place for her due to her not embracing the Villanova way. (See doc. 12 at ¶ 24.)

Second, the alleged discriminatory conduct in no way plausibly shows the conduct was so pervasive that it created an abusive environment. Significantly, the alleged conduct is merely "periodic," "isolated," and not "continuous and concerted."

11

Sousa, 2023 U.S. App. LEXIS 30087, at *6; Trevizo, 2024 U.S. Dist. LEXIS 49741, at *20 (internal quotation marks and citation omitted). Like the insufficient allegations in Trevizo, Plaintiff's allegations involve only a handful of different, petty encounters in the workplace and verbal feedback on Plaintiff's performance. 2024 U.S. Dist. LEXIS 49741, at **3-4. The conduct alleged is even less frequent than the conduct in Sousa, which entailed sending a photo, asking about a haircut, and calling on at least fourteen separate days over the span of three months. Here, the alleged conduct is spread out with only five specified meetings or encounters over the course of approximately twelve to fourteen months. (See doc. 12 at ¶¶ 13-14, 19, 24, 32, 38.) Thus, the conduct cannot plausibly be "continuous and concerted." Trevizo, 2024 U.S. Dist. LEXIS 49741, at *20 (internal quotation marks and citation omitted).

While Plaintiff alleges that Dr. Pratt stated that the president likes her (referring to Dr. Pratt) in "multiple meetings" and that the individual defendants "repeatedly" told her she was not embracing "the Villanova way," these allegations are still insufficient to show continuous, not periodic, conduct. (See doc. 12 at ¶¶ 18, 21.) Like the Trevizo plaintiff's use of the terms "continuously" and "consistently," which the district court found too vague to be deemed pervasive, Plaintiff's use of "multiple" and "repeatedly" in the instant complaint are equally vague. 2024 U.S. Dist. LEXIS 49741, at **19-20; see also Morse, 132 F.3d at 906 (when deciding a motion to dismiss, courts are not to "credit a complaint's bald assertions or legal conclusions") (internal quotation marks omitted); Harris, 2014 U.S. Dist. LEXIS 65452 at *3 ("Conclusory allegations are insufficient to survive a motion to dismiss.").

All and all, the handful of alleged comments and facial expressions complained of by Plaintiff are not extreme, but rather, involve nothing more than "the ordinary tribulations of the workplace." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998). Such allegations do not meet the high bar for pleading unlawful discrimination. By basing her hostile work environment claims on allegations of being told by superiors that she is not embracing a collaborative process, and a few other "offhand comments" or facial expressions, Plaintiff is improperly asking this court to transform discrimination law into "a general civility code." <u>Faragher</u>, 524 U.S. at 778 (internal quotation marks and citations omitted) – an effort that this Court should reject.

### III. <u>CONCLUSION</u>

For the reasons set forth above, the Villanova Defendants respectfully request that this Court dismiss with prejudice all hostile work environment claims in the Amended Complaint based on Plaintiff's failure to state a claim upon which relief may be granted. A proposed Order is submitted herewith.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: January 21, 2025

/s/ Leslie Miller Greenspan
Leslie Miller Greenspan, Esquire
Elizabeth A. Castillo, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
**Attorneys for the
Villanova Defendants**

## CERTIFICATE OF SERVICE

    I, Leslie Miller Greenspan, Esquire, hereby certify I caused a copy of the foregoing document to be filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                   **TUCKER LAW GROUP, LLC**

Dated: January 21, 2025                      /s/ Leslie Miller Greenspan
                                                          Leslie Miller Greenspan, Esquire